John R. Parker, Jr,
California Bar No. 257761
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936
jrparker@almeidalawgroup.com

*[Additional counsel listed on signature page]*

***Attorneys for Plaintiff & the Proposed Class***

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Richard Sancruzado,** *individually and on behalf of all others similarly situated*, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **ENTREPRENEUR MEDIA, LLC**, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Richard Sancruzado, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant Entrepreneur Media, LLC ("Defendant" or "Entrepreneur.com") for violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing to third parties, including, upon information and belief, Meta Platforms, Inc. ("Facebook"), data containing Plaintiff's and other digital-subscribers (i) personally identifiable information and (ii) the computer file containing video viewing history ("Video Media")

1

(collectively, "Personal Viewing Information"). Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters.

### NATURE OF THE ACTION

1.     This is a consumer digital privacy class action complaint against Entrepreneur Media, LLC, for violating the VPPA by disclosing its digital subscribers' identities and Video Media to Facebook without the proper consent.

2.     The VPPA prohibits "video tape service providers," such as Defendant, from knowingly disclosing consumers' personally identifiable information, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without express consent in a stand-alone consent form.

3.     Like other businesses with an online presence, Defendant collects and shares the personal information of visitors to its website, mobile applications, and "video-on-demand" services and applications (collectively, "Streaming Products") with third parties. Defendant does this through cookies, software development kits ("SDK"), and pixels. In other words, digital subscribers to Entrepreneur.com have their personal information disclosed to Defendant's third-party business partners.

4.     Pixels are computer code Defendant installed on Entrepreneur.com that allow it to collect users' data. More specifically, it tracks when digital subscribers open or access Entrepreneur.com. Through the use of these analytics tools, Defendant tracks and discloses to third party business partners, the digital subscribers' viewed Video Media, and most notably, unique identifying information along with requested or obtained video content. This occurs even when the digital subscriber has not shared (nor consented to share) such information.

5.     Importantly, Defendant shares the Personal Viewing Information— *i.e.*, digital subscribers' unique ID and video content viewed together as one data

point. Any ordinary person can use it to quickly and easily locate, access, and view digital subscribers' corresponding account(s) and/or profile(s).

6.   Put simply, Defendant's disclosures allow third parties to know what Video Media one of its users viewed on Entrepreneur.com.

7.   Thus, without telling its digital subscribers, Defendant profits handsomely from its unauthorized disclosure of its digital subscribers' Personal Viewing Information to third parties. It does so at the expense of its digital subscribers' privacy and their statutory rights under the VPPA.

8.   Because Entrepreneur.com digital subscribers are not informed about this dissemination of their Personal Viewing Information – indeed, it is automatic and invisible – they cannot exercise reasonable judgment to defend themselves against the highly personal ways Defendant has used and continues to use data it has about them to make money for itself.

9.   Defendant chose to disregard Plaintiff and millions of other Entrepreneur.com digital subscribers' statutorily protected privacy rights by releasing their sensitive data to third parties. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of intentionally disclosing its digital subscribers' Personal Viewing Information to Facebook, or any other third parties in knowing violation of VPPA.

**JURISDICTION AND VENUE**

10.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

11.   This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

12.   Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in and is subject to personal jurisdiction in this

District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## THE PARTIES

13.     Plaintiff Richard Sancruzado ("Sancruzado") is an adult citizen of the State of Florida and is domiciled in the State of Florida. Sancruzado began a digital subscription to Entrepreneur.com in 2023 and has since ended his subscription. Sancruzado has had a Facebook account from approximately 2023 to the present. During the relevant time period he has used his Entrepreneur.com digital subscription to view Video Media through the Entrepreneur.com website while logged into his Facebook account.

14.     By doing so, Sancruzado's Personal Viewing Information was disclosed to third parties pursuant to the systematic process described herein. Sancruzado never gave Defendant express written consent to disclose his Personal Viewing Information.

15.     Defendant Entrepreneur Media, LLC:

   a.     Entrepreneur Media, LLC's principal address is 2 Executive Circle, #150, Irvine, CA 92614.

   b.     Entrepreneur Media, LLC's "2023 Media Kit" claims that Entrepreneur.com has 25 million monthly page views, with 157,000 daily e-newsletter subscriptions and 720,000 dedicated email subscriptions.[1]

   c.     Entrepreneur.com is a streaming platform which provides a broad selection of video content, including full-length television episodes.

   d.     Entrepreneur.com is used by numerous U.S. digital media viewers.

---

[1]  *See* Entrepreneur Media, LLC 2023 Media Kit, available at https://assets.entrepreneur.com/static/2023_Entrepreneur_MediaKit.pdf

e.    Through Entrepreneur.com.com and App, Defendant delivers and, indeed, is in the business of delivering countless hours of video content to its digital subscribers.

## FACTUAL ALLEGATIONS

### A.    Background of the Video Privacy Protection Act

16.    The VPPA generally prohibits the knowing disclosure of a customer's video rental or sale records without the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations." Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per person), punitive damages, equitable relief, and attorney's fees.

17.    The VPPA was initially passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

18.    Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

19.    In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own

5

homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id*.

20.    While these statements rang true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of data mining from online activities is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."3F[2]

21.    In this case, Defendant chose to deprive Plaintiff and the Class members of that right by knowingly and systematically disclosing their Personal Viewing Information to unauthorized third parties without providing notice to (let alone obtaining consent from) anyone, as explained herein.

**B.    Entrepreneur.com's Digital Subscriptions**

22.    To register for Entrepreneur.com, users create a profile and/or account with Entrepreneur.com. Entrepreneur.com users provide their personal information, including but not limited to their name and email address.

---

[2] *See* Committee on the Judiciary, Subcommittee on Privacy, Technology and the Law, The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century (last accessed February 6, 2024).

23.     Defendant operates the Entrepreneur.com Streaming Products in the U.S. The Streaming Products are available on a broad range of devices, including mobile phones, smart televisions, gaming consoles, etc.

24.     On information and belief, all digital subscribers provide Defendant with their IP address, which is a unique number assigned to all information technology connected devices, that informs Defendant as to subscribers' city, zip code and physical location.

25.     Digital subscribers may provide to Defendant the identifier on the device and/or cookies stored on the device used to view video content on an Entrepreneur.com Streaming Product.

26.     When opening an account, Defendant does not adequately disclose to its digital subscribers that it will share their Personal Viewing Information with third parties. Digital subscribers are also not asked to consent to such information sharing upon opening an account.

27.     After becoming a digital subscriber, viewers have access to a variety of Entrepreneur.com Video Media through the Entrepreneur.com Streaming Products.

28.     Notably, once a digital subscriber signs in and watches Entrepreneur.com Video Media, the digital subscriber is not provided with any notification that their Personal Viewing Information is being shared. Similarly, Defendant also fails to obtain digital subscribers' written consent to collect their Personal Viewing Information "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as the VPPA requires.

**C.     Defendant Admits It Collects & Discloses Certain Personal Information of Digital Subscribers to Third Parties But Fails to Advise It Discloses Personal Viewing Information, as Required Under the VPPA.**

29.     The operative Privacy Policy for Entrepreneur.com states that it collects "Personal Data" from its users:

> We collect information about you from the following two sources…

> The information we collect from your use of our Service. This information relates generally to what editorial and advertising content you view, and the products and services you use that we and our third-party providers offer. This information includes:

> Device Information, we collect information about the devices you use to access our Service, such as hardware settings, browser type, browser language, the date and time of your request and referral URL.

> Log Information. When you use our Service, we automatically collect and store certain information in server logs, which automatically record certain information when you use our Service, including the following:
> details about how you have used our Service, such as your search queries;
> your IP address, which is the number assigned to an Internet connected device such as a tablet or smartphone and used to identify the geographic location of that device; and
> cookies that may uniquely identify your browser and collect information about how our visitors interact with our Service, as well as help us identify problems such as error messages from certain pages. A cookie is a small file containing a string of characters that is sent to your computer or other device when you visit our Service. When you visit our Service any time thereafter, the cookie allows our Service to recognize your browser and to store information about your user preferences and other personal information.

> Location information. When you visit our Service, we may collect and process information about your actual location. We use various technologies to determine location, including IP address.

8

1

2          Local storage. We may collect and store information (including
3    personal information) locally on your device, using mechanisms such
     as browser web storage (including HTML 5), which allows for data to
4    be stored on a browser even after the browser has been closed and the
5    reopened, and application data caches, which allow for data to be
     stored on your device, enabling an application to run without an
6    Internet connection and to load content faster.

7          Collection and Storage technologies. We and our partners use
8    various technologies to collect and store information when you access
     the EMI Service, and this may include using cookies or other
9    technologies to identify your browser or device. We also use these
10   technologies to collect and store information when you access our
     Service and interact with the content and products and services we
11   offer, such as advertising services.[3]

12         30.    Defendant discloses in its Privacy Policy that they automatically

13   "We may share your information publicly and with our partners such as third-party

14   content providers, advertisers or connected sites, but in a manner which does not

15   reveal your personally-identifiable information and which is aggregated with other

16   user information to show usage of EMI and third-party products and services

17   offered on our Service and trends based on such categories as age, gender,

18   geographical origination and other demographic characteristics."[4]

19         31.    Importantly, nowhere in Entrepreneur.com's Terms of Service or

20   Privacy Policy is it disclosed that Defendant will share digital subscribers' private

21   and protected Personal Viewing Information with third parties, including but not

22   limited to Facebook.

23

24

25

26

27   [3] See https://www.entrepreneur.com/privacy-policy (last accessed December 2023).

28   [4] See id.

                                          9

**D.    How Entrepreneur.com Disseminates Digital Subscribers' Personal Viewing Information.**

**1.    Tracking Pixels**

32.    Websites and apps use Facebook pixel(s) and SDK(s) (collectively "Tracking Code") to collect information about user's devices and activities and send that to third parties.

33.    Tracking Code is an invisible tool that tracks consumers' actions on the Entrepreneur.com Streaming Products and shares information with unauthorized third parties.

34.    Defendant installed Tracking Code on Entrepreneur.com Streaming Products, which enables the Streaming Product to disclose Plaintiff's and Class Members' Personal Viewing Information to third parties, because it benefits financially from the advertising and information services that stem from use of the Tracking Code. When a Entrepreneur.com digital subscriber enters the website or other Streaming Product and watches Video Media on a Entrepreneur.com Streaming Product, the Streaming Product sends certain information about the viewer, including, but not limited to, their identity and the media content the digital subscriber watched, to unauthorized third parties. Specifically, Entrepreneur.com sends the video content name, and, most notably, the viewers' unique ID to third parties.

**2.    Unique ID's**

35.    Third parties, such as Facebook, use unique and persistent identifiers that are assigned to each user. With a user's Unique ID, any ordinary person can look up user's profiles.

36.    Specifically for Facebook, when a Facebook user with one or more personally identifiable FID cookies on their browser views Video Media from a Entrepreneur.com Streaming Product, that product, through its computer code, causes the user's identity and viewed Video Media to be transmitted to Facebook

10

by the user's Streaming Product of choice. This transmission is not the digital subscribers decision, but results from Defendant's purposeful use of its Facebook tracking pixels by incorporation of those pixels and code into the Entrepreneur.com Streaming Product. Defendant could easily program the Streaming Product so that this information is not automatically transmitted to Facebook when a subscriber views Video Media. However, it is not Defendant's financial interest to do so because it benefits financially by providing this highly sought-after information.

37.    Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile. Simply put, with only an FID and the video content name and URL—all of which Defendant knowingly and readily provides to Facebook without any consent from the digital subscribers—any ordinary person could learn the identity of the digital subscriber and the specific video or media content they requested on a Entrepreneur.com Streaming Product.

38.    At all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook. This was evidenced from, among other things, the functionality of the pixel, including that it enabled Defendant show targeted advertising to its digital subscriber's based on the products those digital subscribers had previously viewed on a Streaming Product, including Video Media consumption, for which Defendant received financial remuneration.

39.    Similarly, other third parties had similar functions to the Facebook FID described above.

**E.    Entrepreneur.com Unlawfully Discloses Its Digital Subscribers' Personal Viewing Information to Unauthorized Third Parties.**

40.    Defendant maintains a vast digital database comprised of its digital subscribers' Personal Viewing Information, including the names and e-mail

11

1  addresses of each digital subscriber and information reflecting the Video Media that

2  each of its digital subscribers viewed.

3     41.    Defendant is not sharing anonymized, non-personally identifiable data

4  with third parties. To the contrary, the data it discloses is tied to unique identifiers

5  that track specific users. Importantly, the recipients of the Personal Viewing

6  Information—Facebook, etc.—receive the Personal Viewing Information as one

7  data point. Defendant has thus monetized its database by disclosing its digital

8  subscribers' Personal Viewing Information to third parties in a manner allowing it

9  to make a direct connection—without the consent of its digital subscribers and to

10  the detriment of their legally protected privacy rights.

11     42.    Critically, the Personal Viewing Information Defendant discloses to

12  unauthorized third parties allows those third parties to build from scratch or cross-

13  reference and add to the data it already has in their own detailed profiles for its own

14  users, adding to its trove of personally identifiable data.

15     43.    These factual allegations are corroborated by publicly available

16  evidence. For instance, as shown in the screenshot below, a user visits

17  Entrepreneur.com and clicks on a episode titled "Watch the Pitch That Landed a

18  $175,000 Investment" from the television show "Entrepreneur Elevator Pitch" and

19  watches.

20

21

22

23

24

25

26

27

28

12



*Pictured above: The Entrepreneur.com page for the television series "Entrepreneur Elevator Pitch" episode titled "Watch the Pitch That Landed a $175,000 Investment" (taken from Entrepreneur.com on or about December 14, 2023).*

44.     As demonstrated below, once the user clicks on and watches the video, Entrepreneur.com sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook.

| ▼ Request Headers | |
| --- | --- |
| :authority: | www.facebook.com |
| :method: | GET |
| :path: | /tr/? |
| | id=1098588566942656&ev=PageView&dl=https%3A%2F%2Fwww.entrepreneur.com%2Fs |
| | tarting-a-business%2Fwatch-the-pitch-that-landed-a-175000- |
| | investment%2F437619&rl=https%3A%2F%2Fwww.entrepreneur.com%2Fvideo&if=false&t |
| | s=1702579804467&sw=1536&sh=1024&ud[external_id]=4e367a684e2a6e840228685b6f |
| | df5696&v=2.9.138&r=stable&ec=0&o=4126&fbp=fb.1.1702579158892.535105709&cs_e |
| | st=true&ler=empty&it=1702579804028&coo=false&dpo=LDU&dpoco=0&dpost=0&rq |
| | m=GET |
| :scheme: | https |
| Accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding: | gzip, deflate, br |
| Accept-Language: | en-US,en;q=0.9 |
| Cache-Control: | no-cache |
| Cookie: | sb=0Q1ZZNrg3IMtNtDQN_89dQST; datr=3w1ZZPd9ieEH7J8AOb5PmWj0; |
| | c_user=▮▮▮▮▮▮▮▮▮; xs=13%3AAZIczCfxH44Exw%3A2%3A1702402625%3A-1%3A-1; |
| | fr=0vTpJGtpQ3e5vE6ih.AWWRATnsVX- |
| | 0vIPzHQf69B2M2pI.BleJI4.K3.AAA.0.0.BIe00L.AWXCRxFLmWc |
| Pragma: | no-cache |
| Referer: | https://www.entrepreneur.com/ |
| Sec-Ch-Ua: | "Not_A Brand";v="8", "Chromium";v="120", "Google Chrome";v="120" |
| Sec-Ch-Ua-Mobile: | ?0 |
| Sec-Ch-Ua-Platform: | "Windows" |
| Sec-Fetch-Dest: | image |
| Sec-Fetch-Mode: | no-cors |
| Sec-Fetch-Site: | cross-site |
| User-Agent: | Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) |
| | Chrome/120.0.0.0 Safari/537.36 |

*HTTP single communication session sent from the device to Facebook, reveals the video name, URL and the viewer's FID (c_user field)*

45.     As a result of Defendant's data compiling and sharing practices, Defendant has knowingly disclosed to Facebook, and other third parties, for its own personal profit the Personal Viewing Information of Defendant's digital subscribers, together with additional sensitive personal information.

46.     Defendant does not seek its digital subscribers' prior written consent to the disclosure of their Personal Viewing Information (in writing or otherwise) and its customers remain unaware that their Personal Viewing Information and other sensitive data is being disclosed to unauthorized third parties.

47.    By disclosing its digital subscribers Personal Viewing Information to unauthorized third parties – which undeniably reveals their identity and the specific video materials they requested from Defendant's website – Defendant has intentionally and knowingly violated the VPPA.

**F.    Disclosing Personal Viewing Information is Not Necessary.**

48.    Tracking pixels are not necessary for Defendant to operate Entrepreneur.com's Streaming Products. They are deployed on Defendant's website for the sole purpose of enriching Defendant.

49.    Even if an on-line content provider found it useful to integrate Tracking Code, Defendant is not required to disclose Personal Viewing Information to third parties. In any event, if Defendant wanted to do so, it must first comply with the strict requirements of VPPA, which it failed to do.

**G.    Plaintiff's Experience.**

50.    Plaintiff Richard Sancruzado has been a digital subscriber of Entrepreneur.com beginning in 2023. Plaintiff Sancruzado became a digital subscriber of Entrepreneur.com by providing, among other information, his name, address, email address, IP address (which informs Defendant as to the city and zip code he resides in as well as his physical location), and any cookies associated with his device. As part of his subscription, he received emails and other communications from Entrepreneur.com.

51.    Plaintiff Sancruzado has had a Facebook account since approximately 2023. In 2023, Plaintiff Sancruzado viewed Video Media via Entrepreneur.com Streaming Products.

52.    Plaintiff Sancruzado never consented, agreed, authorized, or otherwise permitted Defendant to disclose his Personal Viewing Information to third parties. Plaintiff Sancruzado has never been provided any written notice that Defendant discloses its digital subscribers' Personal Viewing Information, or any means of opting out of such disclosures of his Personal Viewing Information. Defendant

15

1  nonetheless knowingly disclosed Plaintiff Sancruzado's Personal Viewing

2  Information to any third parties.

3  49.   Because Plaintiff Sancruzado is entitled by law to privacy in his

4  Personal Viewing Information, Defendant's disclosure of his Personal Viewing

5  Information deprived Plaintiff Sancruzado of the full set of benefits to which he is

6  entitled to. Plaintiff Sancruzado did not discover that Defendant disclosed his

7  Personal Viewing Information unauthorized third parties, until December of 2023.

8  **CLASS ACTION ALLEGATIONS**

9  53.   Plaintiff brings this action individually and on behalf of all others

10  similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the

11  Federal Rules of Civil Procedure, on behalf of the following class (the "Class"):

> All persons in the United States who: (1) were registered
> users of an online website, mobile application, or any
> video-on-demand service or application owned,
> controlled, and/or operated by Entrepreneur.com; and (2)
> who viewed videos on an online website, mobile
> application, or any video-on-demand service or
> application owned, controlled, and/or operated by
> Entrepreneur.com.

17  54.   Excluded from the Class are Defendant, their past or current officers,

18  directors, affiliates, legal representatives, predecessors, successors, assigns and any

19  entity in which any of them have a controlling interest, as well as all judicial officers

20  assigned to this case as defined in 28 USC § 455(b) and their immediate families.

21  55.   Numerosity. Members of the Class are so numerous and

22  geographically dispersed that joinder of all members of the Class is impracticable.

23  Plaintiff believes that there are millions of members of the Class widely dispersed

24  throughout the United States. Class members can be identified from Defendant's

25  records.

26  56.   Typicality. Plaintiff's claims are typical of the claims of members of

27  the Class. Plaintiff and members of the Class were harmed by the same wrongful

28  conduct by Defendant in that Defendant caused Personal Viewing Information to

16

be disclosed to third parties without obtaining express written consent. Their claims are based on the same legal theories as the claims of other Class members.

57.   <u>Adequacy</u>. Plaintiff will fairly and adequately protect and represent the interests of the members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

58.   <u>Commonality</u>. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

a.   Whether Defendant knowingly disclosed Class members' Personal Viewing Information to Facebook and other third parties;

b.   Whether the information disclosed to Facebook concerning Class members' Personal Viewing Information constitutes personally identifiable information under the VPPA;

c.   Whether Defendant's disclosure of Class members' Personal Viewing Information to Facebook and other third parties was knowing under the VPPA;

d.   Whether Class members consented to Defendant's disclosure of their Personal Viewing Information to Facebook and other third parties in the manner required by 18 U.S.C. § 2710(b)(2)(B); and

e.   Whether the Class is entitled to damages as a result of Defendant's conduct.

CLASS ACTION COMPLAINT

59.    <u>Superiority</u>. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

60.    Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

# CLAIM FOR RELIEF
# FIRST CLAIM FOR RELIEF
## Violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710

61.    Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

62.    The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

63.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

64.    Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

18

65.    As defined in 18 U.S.C. § 2710(a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

66.    Defendant knowingly caused Personal Viewing Information concerning Plaintiff and Class members to be disclosed to unauthorized third parties. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics as an individual who viewed Entrepreneur.com Video Media, including the specific video materials requested from the website.

67.    As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged in the preceding paragraphs, Plaintiff subscribed to a digital Entrepreneur.com plan that provides Video Media content on Entrepreneur.com Streaming Products. Plaintiff is thus a "consumer" under this definition.

68.    As set forth in 18 U.S.C. § 27109(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner." Defendant failed to obtain informed, written consent under this definition.

69.    In addition, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). It requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide an opportunity to opt out as required by the VPPA.

19

70.    Defendant knew that these disclosures identified Plaintiff and Class members to third parties. Defendant also knew that Plaintiff's and Class members' Personal Viewing Information was disclosed to third parties, because, inter alia, Defendant chose, programmed, and intended for those third parties to receive the video content name, and, most notably, the digital subscribers' specific ID.

71.    By disclosing Plaintiff's and the Class's Personal Viewing Information, Defendant violated Plaintiff's and the Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

72.    As a result of the above violations, Defendant is liable to the Plaintiff and other Class members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

## PRAYER FOR RELIEF

73.    Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Honorable Court:

a.    Determine that this action may be maintained as a class action pursuant to Fed R. Civ. P. 23(a), (b)(2), and (b)(3) and declare Plaintiff as the representative of the Class and Plaintiff's Counsel as Class Counsel;

b.    For an order declaring that Defendant's conduct as described herein violates the federal VPPA, 18 U.S.C. § 2710(c)(2)(D);

c.    For Defendant to pay $2,500.00 to each Plaintiff and each Class member, as provided by the VPPA, 18 U.S.C. § 2710(c)(2)(A);

d.    For punitive damages, as warranted, in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

20

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, 18 U.S.C. § 2710(c)(2)(C).

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury on all issues so triable.

Dated: February 6, 2024    Respectfully submitted,

*/s/ John R. Parker, Jr.*
John R. Parker, Jr.
California Bar No. 257761
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936
jrparker@almeidalawgroup.com

David S. Almeida*
Britany A. Kabakov*
Matthew J. Langley
California Bar No. 342846
**ALMEIDA LAW GROUP LLC**
849 W Webster Avenue
Chicago, IL 60614
Tel: (312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com
matt@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Class*

*To be admitted Pro Hac Vice*

CLASS ACTION COMPLAINT